IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | CONSOLIDATED UNDER |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET No. 875 |
| | : | |
| JACOBS, ET AL. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| A-C PRODUCT LIABILITY | : | Certain cases on the |
| TRUST, ET AL. | : | 02-md-875 Maritime Docket |
| | : | (MARDOC), listed in the |
| Defendants. | : | attached exhibits |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         March 11, 2014


I.    INTRODUCTION

        In Bartel v. Various Defendants, ___ F. Supp. 2d ___,

No. 2 MDL 875, 2013 WL 4516651, at *2 (E.D. Pa. Aug. 26, 2013)

(Robreno, J.), this Court granted 418 motions to dismiss for

lack of personal jurisdiction in various Group 1 cases on the

maritime docket (MARDOC)[1] in MDL 875. In the same memorandum, the

Court denied 147 motions to dismiss due to improper service. The

cases at issue in Bartel were filed in the Northern District of

Ohio by the Jaques Admiralty Law Firm on behalf of various

merchant marines, representatives, survivors and spouses. The

_____

[1]        Additional information on the background and history
of the MARDOC litigation, including discussion on how the cases
were separated into different groups, can be found in this
Court's opinion in Bartel. 2013 WL 4516651, at *1-2.

motions to dismiss were filed by various shipowner defendants.

Now, before the Court are 6,267 motions to dismiss in various Northern District of Ohio MARDOC Groups 4, 5, 6, and 7 cases.[2] As in Bartel, these cases involve shipowner defendants who assert the defense of lack of personal jurisdiction or improper service of process. The papers submitted by the parties in connection with these motions are nearly identical to the papers submitted in connection with the motions in Bartel. The only additional evidence plaintiffs have submitted with the instant motions is a supplement containing alleged "new" evidence that defendants waived the defense of lack of personal jurisdiction.[3] It is to this "new" evidence that this memorandum is addressed.

For the reasons outlined in Bartel and this memorandum, the 5,974 motions to dismiss for lack of personal jurisdiction listed in Exhibit "A," attached, will be granted,

_____

[2]      A hearing was held on the present 6,267 motions on February 27, 2014. The Court also listed sixty-eight motions for the hearing that asserted there was insufficient service of process (i.e., no record of service). The parties agreed at the hearing to resolve those motions on their own. Therefore, the Court need not reach the issue of whether service was insufficient in those cases.

[3]      Plaintiffs are jointly represented by Jaques Admiralty Law Firm and Motley Rice LLC. A majority of the defendants are represented by Thompson Hine LLC who account for 5,728 of the motions to dismiss. Accordingly, plaintiffs' supplemental evidence primarily focuses on the actions of Thompson Hine throughout the litigation.

and the defendants who filed the motions will be dismissed from the cases.

As to the 293 motions to dismiss due to improper service of process listed in Exhibit "B," attached, the motions will be denied.

## II.   LEGAL STANDARD

A.   Motions to Dismiss based on Lack of Personal Jurisdiction under Rule 12(b)(2)

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]here are specific analytical steps [the Court] must take in determining whether personal jurisdiction can be asserted over a nonresident defendant[,]" and "Rule 4(e) of the Federal Rules of Civil Procedure is the starting point." Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (citing Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). Rule 4(e) allows for personal jurisdiction over non-resident defendants to the extent authorized under the law of the state in which the district court sits. For purposes of a Rule 4(e) analysis in the present cases, the forum state in this case is Ohio.[4]

---

[4]        On issues of federal law or federal procedure, the MDL transferee court applies the law of the circuit in which it sits (here, the Third Circuit). See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 363 (E.D.

B.   <u>Motions to Dismiss based on Improper Service under
     Rule 4</u>

Under Federal Rule of Civil Procedure 4(m), "[i]f a
defendant is not served within 120 days after the complaint is
filed," then "the court . . . must dismiss the action without
prejudice against that defendant or order that service be made
within a specified time. But if the plaintiff shows good cause
for the failure, the court must extend the time for service for
an appropriate period." The Third Circuit has interpreted this
rule to mean that, even without good cause, the court can, in
its discretion, provide additional time to cure rather than
dismiss the defendants. <u>Petrucelli v. Bohringer & Ratzinger</u>, 46
F.3d 1298, 1305 (3d Cir. 1995).


**III. DISCUSSION**

A.   <u>Motions to Dismiss based on Lack of Personal
     Jurisdiction under Rule 12(b)(2)</u>

1.   <u>Summarizing Bartel</u>

In <u>Bartel</u>, there were two categories of shipowner
defendants: (1) those with no Ohio contacts; and (2) those with
Ohio contacts that were unrelated to the plaintiffs' injuries.
2013 WL 4516651, at *4. This Court held that it did not have
personal jurisdiction over either type of defendant because Ohio

---

Pa. 2009) (Robreno, J.) (citing <u>In re Korean Air Lines Disaster</u>,
829 F.2d 1171, 1178 (D.C. Cir. 1987)).

does not recognize general jurisdiction. Id. at *5-6; Kauffman
Racing Equip., L.L.C. v. Roberts, 930 N.E.2d 784, 790 (Ohio
2010); Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012).
Because the plaintiffs' complaints did not make jurisdictional
allegations about any of the shipowner defendants' specific
activities that allegedly caused injury to the plaintiffs, this
Court found that there was no personal jurisdiction over the
defendants. Bartel, 2013 WL 4516651, at *6.

    The plaintiffs in Bartel next argued that the
shipowner defendants waived the right to raise the defense of
lack of personal jurisdiction. This Court held that the
shipowner defendants did not waive the defense of lack of
personal jurisdiction because they consistently raised the
defense throughout the litigation, and did not participate in
the litigation of their own volition. Bartel, 2013 WL 4516651,
at *6 (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des
Bauxites de Guinee, 456 U.S. 694, 703 (1982)).

    "First, as early as 1987, while the cases were still
in the Northern District of Ohio, defendants raised the issue of
lack of personal jurisdiction." Id. (citations omitted).
Moreover, defendants' motions to dismiss have routinely been
denied without prejudice as they have been ordered to
participate in the litigation prior to the disposition of these
motions on the merits. Id. "Essentially, defendants are now, for

the first time since 1989, being given the chance to argue the issue of personal jurisdiction before the Court." Id. Second, the shipbuilder defendants in Bartel did not intend to waive the defense despite filing answers. Id. at *7. "[T]he answers included prefaces that specifically stated that defendants were filing the answers 'under protest' pending review by the Court of Appeals of Judge Lambros' decision to transfer rather than dismiss the cases."[5] Id.; see also Fed. R. Civ. P. 8(b).

Finally, this Court held that transfer was not permitted due to the Supreme Court's decision in Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). Bartel, 2013 WL 4516651, at *7-8. Accordingly, the shipowner defendants' motions to dismiss based on lack of personal jurisdiction were granted. Id. at *8.

>    2.    Plaintiffs' Supplemental Evidence and Defendants'
>          Response

Following this Court's decision in Bartel, the instant plaintiffs submitted essentially identical responses to the

---

[5]    At a hearing in 1989, Judge Lambros found that there was no personal jurisdiction over approximately 100 shipowner defendants named in the plaintiffs' complaints. However, Judge Lambros stated at the hearing that he would transfer the cases rather than grant the defendants' motions to dismiss. Defendants requested that Judge Lambros certify the issue for interlocutory appeal because they asserted that transfer was unlawful and dismissal was the proper remedy. Ultimately, Judge Lambros never ruled on the motion for certification and never issued severance orders transferring the cases. Bartel, 2013 WL 4516651, at *3.

shipowner defendants' motions to dismiss for lack of personal jurisdiction. However, plaintiffs also included "new" evidence that allegedly shows that defendants waived the defense of lack of personal jurisdiction either explicitly, or through their conduct throughout the litigation.[6]

### i.   Exhibits B and C

Plaintiffs attach ex-parte letters counsel sent to Judge Lambros in 1990 and 1991. The letters highlight for the Judge which shipowner defendants "initially objected to jurisdiction but thereafter by way of their answer or, otherwise waived jurisdiction." Plaintiffs again assert that by filing answers defendants waived jurisdiction. Defendants argue that the answers were filed with the defense of lack of personal jurisdiction intact. Defendants also note that this argument was rejected by this Court in Bartel. 2013 WL 4516651, at *7.

### ii.   Exhibit G

Plaintiffs attach "Thompson Hine's Response in Opposition to Plaintiffs' Motion to Transfer in Toto." In "Plaintiffs' Motion to Transfer in Toto," plaintiffs moved Judge

---

[6]      Plaintiffs submitted this new evidence by incorporating it into their response to the individual defendants' motions, or by separately filing a "supplemental response" on the docket. The exhibits referenced in this memorandum refer to "Plaintiffs' Supplemental Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction." See No. 02-md-875, ECF No. 3365 (Groups 4 & 5); ECF No. 3701 (Group 6); and ECF No. 3997 (Group 7).

Lambros to transfer all of a particular plaintiff's claims to one district.[7] Plaintiffs point to the following from Thompson Hine's response:

> Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid the expense of litigating these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in this Court.
> . . .
> Furthermore, some nonresident defendants who are not subject to the personal jurisdiction of this Court elected to waive that valuable due process right and submit themselves to the Court's jurisdiction to take advantage of this Court's experience in the handling of mass tort litigation, the consolidated handling of cases available in this Court, and to avoid the inconvenience of litigating these cases simultaneously in 13 scattered jurisdictions.

Defendants counter that the cited portions in no way prove that every defendant waived the defense of lack of personal jurisdiction. Defendants assert that the primary argument in their response was that transfer was unlawful and that dismissal was the proper remedy. Defendants also note that there is no way to tell which "nonresident defendants" waived jurisdiction, how they waived this defense, and whether any of

---

[7]     See Exhibit E. Plaintiffs argued that their claims were being "splintered" because some defendants requested transfer to certain districts, while other defendants elected to stay in Ohio (by filing answers).

these nonresident defendants were even represented by Thompson
Hine.[8]

### iii.  Exhibit L

Plaintiffs point to a January 1991 hearing transcript
in front of Judge Lambros in which Thompson Hine stated:

> . . . but trials of the Ohio cases in
> Detroit are something that our clients
> waived jurisdictional objections to proceed
> here in Cleveland.

Defendants note that this hearing transcript involved a group of
twenty cases in a trial cluster in Cleveland, Ohio. Defendants
had won three of the four cases that had been tried, and had
agreed to waive personal jurisdiction in the other sixteen cases
remaining in that cluster for strategic, case-specific purposes.

### iv.  Exhibit Q

Plaintiffs cite to Thompson Hine's 1991 brief
submitted to the Judicial Panel on Multidistrict Litigation
prior to the creation of MDL 875. The defendants opposed
consolidation of the MARDOC cases in the proposed asbestos MDL.
Plaintiffs argue that this opposition was another sign that
Thompson Hine wanted the cases to remain in the Northern
District of Ohio and, as a consequence, that they had waived
their opposition to personal jurisdiction.

---

[8]        Defendants not represented by Thompson Hine have
argued at the hearing, and in their papers, that statements made
by Thompson Hine pertaining to any purported waiver cannot be
attributed to them.

Defendants note that they opposed consolidation because they felt the maritime cases were legally and factually dissimilar than many of the state-law based asbestos claims across the country. Defendants also assert that they opposed consolidation because they could have received final orders in the Northern District of Ohio more quickly, such that they could have appealed Judge Lambros' decision to not dismiss the cases on personal jurisdiction grounds.

v.   Exhibit R

Plaintiffs cite to dockets from the Northern District of Ohio and argue that defendants have not raised the defense of personal jurisdiction in cases that have since been remanded from the MDL to the Northern District of Ohio. Defendants note that this argument was raised in the briefing and hearing in Bartel and was not considered persuasive by this Court.

vi.   Exhibit T

Finally, Plaintiffs attach a declaration from Hartley Martyn, signed October 22, 2013. Mr. Martyn was appointed by Judge Lambros and served as Special Master for the MARDOC litigation in the Northern District of Ohio from 1988 to 1991. Mr. Martyn asserts that he worked closely with counsel for plaintiffs and defendants through his capacity as Special Master. Mr. Martyn also avers the following:

5.   After  MARDOC  Order  41  was  issued,

counsel from Thompson Hine & Flory
informed Judge Lambros and me that a
large majority of their clients desired
to waive the defense of lack of
personal jurisdiction in order to
remain in the Northern District of
Ohio.

6.  Counsel from Thompson Hine & Flory also
informed Judge Lambros and me of their
clients' intent to not object on the
basis of personal jurisdiction for the
ongoing filing of MARDOC cases filed in
the Northern District of Ohio and to
allow the cases to be litigated in that
district.

7.  Although not recorded in a formal
proceeding, there was an agreement
between Leonard C. Jaques on behalf of
Plaintiffs and Thomas O. Murphy of
Thompson Hine & Flory for cases to
continue to be filed in the Northern
District of Ohio without Defendants
threatening to file motions to dismiss
or motions to transfer based on a lack
of personal jurisdiction. Thomas O.
Murphy made this agreement in his
capacity as counsel for all Thompson
Hine & Flory Defendants.

Defendants note that the declaration gives no date
when this waiver occurred and does not discuss the circumstances
of the waiver. Defendants state that the declaration does not
note which defendants "desired" to waive the defense, and which
defendants "did not desire" to waive the defense. Moreover,
defendants assert that the declaration does not specify which
defendants actually did waive the defense (rather than just
"desire" to waive the defense). Finally, defendants assert that

there is no formal agreement on the record, or in writing, regarding any of these purported statements made in the presence of Mr. Martyn. Therefore, defendants argue that the Court should disregard this declaration.[9]

> 3.  <u>Analysis</u>

The "supplemental" evidence presented by plaintiffs does not alter the analysis of the outcome of the Court's decision in <u>Bartel</u> granting the defendants' motions to dismiss for lack of personal jurisdiction. That decision surveyed the twenty-plus years of history of these cases and found that the plaintiffs had failed to show that either: (1) under Ohio law, the Court could exercise personal jurisdiction over the defendants; or (2) that the defendants had not timely asserted or had waived their personal jurisdiction defense.[10]

Because the defense of lack of personal jurisdiction is raised, plaintiffs have the burden of showing, by a

_____

[9]     Defendants also object that the declaration is inadmissible hearsay, is inherently unreliable, lacks foundation, is vague, is uncorroborated, is irrelevant, and is contrary to the record.

[10]     At the February 27, 2014 hearing, defendants represented by Thompson Hine agreed to withdraw their motions to dismiss in any cases where plaintiffs could produce coast guard records establishing that a particular plaintiff sailed on a particular defendant's ship in the navigable waters of Ohio. Plaintiffs have thirty days from the entry of this memorandum and accompanying order to produce such records to the Court. Upon such a showing, the Court will vacate the order as to those defendants' motions.

preponderance of the evidence, the existence of jurisdiction as to each defendant in each individual case. Control Screening LLC v. Tech. Application and Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012).  Plaintiffs now seek to revisit the Court's decision, particularly as it relates to the argument that defendants have waived the defense of lack of personal jurisdiction.[11] However, the "supplemental" evidence now proffered does not tip the scale in favor of plaintiffs' argument.

First, Exhibits B and C, the ex-parte letters submitted to Judge Lambros, are not new evidence of waiver. The Court determined in Bartel that the filing of answers did not constitute waiver because defendants filed the answers under protest and asserted the defense in their answer. 2013 WL 4516651, at *7. Next, Exhibit G is not evidence that any specific defendant waived the defense of lack of personal jurisdiction. The attached document does not identify which

---

[11]        At the hearing, plaintiffs' counsel also appealed to this Court for equitable relief, citing the interests of justice, the extensive history of the litigation, and fairness to plaintiffs and the potentially few remaining peripheral defendants involved in these MARDOC cases if the Court were to grant the shipowner defendants' motions to dismiss. First, as the Court previously pointed out, the result is not inequitable in that plaintiffs' counsel continued to file cases in the Northern District of Ohio after Judge Lambros had ruled that the court could not exercise personal jurisdiction over the defendants. Bartel, 2013 WL 4516651, at *8. In any event, a plea to equity cannot trump the result that due process and Ohio law mandates in these cases.

"nonresident defendants" consented to the waiver, and under what circumstances this alleged waiver was effectuated. It is plaintiffs' burden to demonstrate these facts in each individual case. See Control Screening, 687 F.3d at 167.

Plaintiffs urge that Exhibit G illuminates defendants' intention to waive the defense in all cases and take advantage of the forum in the Northern District of Ohio. Plaintiffs also point to Exhibit Q in support of this assertion. Exhibit Q merely shows that defendants resisted the idea of being included in a federal asbestos MDL; an arguably justifiable resistance given the length of time that these cases have lingered in MDL 875. In no way does this exhibit show that defendants globally waived a defense that they had consistently raised since the inception of this litigation.

Viewed together, the Court is not persuaded that these exhibits show by a preponderance of the evidence a universal waiver by all defendants, in all cases, in perpetuity.[12] What the snippets from briefs and letters reflect, at best, is that some defendants in these cases either considered or would have been willing to accept a court order keeping their individual case in

---

[12]     As the Court noted in Bartel, "[n]ot all of the defendants who are currently in the MARDOC cases were in the cases as early as the time when Judge Lambros required defendants to file answers . . . . Clearly, the plaintiffs' waiver arguments would not be applicable to the defendants who were added to the cases later." 2013 WL 4516651, at *7 n.12.

the Northern District of Ohio (as opposed to being transferred

to various districts) in return for waiving the defense of

personal jurisdiction.[13]

Defendants concede that Exhibit L proves waiver, but

only in those sixteen specific cases - none of which are before

the Court. Similarly, Exhibit R shows that some defendants may

have not argued the defense of lack of personal jurisdiction on

remand. Importantly, as these cases are remanded, they are not

before this Court. Moreover those defendants' legal decisions

cannot be imputed on other defendants or other plaintiffs'

cases. Put simply, plaintiffs have not produced any case-

specific evidence of record identifying which defendants in the

instant cases actually elected to make the strategic legal

decision to waive the defense of lack of personal jurisdiction.

See Ins. Corp. of Ireland, 456 U.S. at 703 (1982).

Assuming that it is admissible, the declaration of

then-Special Master Hartley Martyn fails to show that defendants

affirmatively waived the defense of lack of personal

---

[13]        Any suggestion that the court informally, or off the
record before the MDL was created and the cases were transferred
to the Eastern District of Pennsylvania, recognized that
defendants had agreed to submit to jurisdiction in Ohio is
rejected. "Courts must speak by orders and judgments, not by
opinions, whether written or oral, or by chance observations or
expressed intentions made by courts during, before, or after
trial, or during argument." Murdaugh Volkswagen, Inc. v. First
Nat'l Bank of South Carolina, 741 F.2d 41, 44 (4th Cir. 1984).

jurisdiction.[14] Mr. Martyn carefully couches his declaration in terms of defendants' "desire" to waive said defense. Importantly, Mr. Martyn does not point to any matters of record which would support his twenty-plus-year-old memory of the events.

For all of these reasons, based on the evidence presented, the Court finds that plaintiffs have failed to show by a preponderance of the evidence that the Court has personal jurisdiction over the defendants. See <u>Control Screening</u>, 687 F.3d at 167.

B.   <u>Motions to Dismiss based on Improper Service under Rule 4</u>

1.   <u>Summarizing Bartel</u>

In <u>Bartel</u>, the Court held that service of process is proper under Ohio law if "plaintiffs can produce sufficient

---

[14]      The Court is troubled by the submission of Special Master Martyn's declaration on behalf of a party to the litigation. A Special Master "is a surrogate of the Court and in that sense the service performed is an important public duty of high order in much the same way as is serving in the Judiciary." <u>Louisiana v. Mississippi</u>, 466 U.S. 921, 921 (1984) (Burger, C.J., dissenting from Court's approval of certain special master expenses). Mr. Martyn's declaration borders on advocacy rather than impartiality. The Code of Judicial Conduct for United States Judges Canon 3.C(1) "provides that '[a]nyone . . . who is an officer of a judicial system performing judicial functions, including an officer such as a . . . special master . . . is a judge for the purpose of this Code.' <u>Id.</u> at I-58. It is this prophylactic protection against bias on the part of '[a]ny one . . . performing judicial functions,' expressly including special masters, that Canon 3.C(1) of the Code of Judicial Conduct is designed to achieve." <u>Jenkins v. Sterlacci</u>, 849 F.2d 627, 630-31 (D.C. Cir. 1988).

16

proof which verifies and confirms that through the mailing of the process papers, defendant received notice of the pending action." 2013 WL 4516651, at *10 (citing Piercey v. Miami Valley Ready-Mixed Pension Plan, 110 F.R.D. 294, 295 (S.D. Ohio 1986)). The Court determined that "a signed returned green card, evidencing receipt by defendant of the original process papers, serves as sufficient proof of service" under Ohio law and the law of the case. Id.

The Court directed Magistrate Judge Hey to oversee the process of allowing defendants to challenge the authenticity and genuineness of the green cards that plaintiffs produced. Id. at *10 n.23.

2.  Analysis

Here, no new evidence has been presented to disturb the Court's decision in Bartel regarding improper service of process. Accordingly, defendants' motions to dismiss based on improper service of process are denied. Magistrate Judge Hey has provided the moving defendants in all MARDOC cases with an opportunity to challenge the authenticity and genuineness of the green cards produced by plaintiffs. See No. 02-md-875, ECF No. 3382.[15]

---

[15]    Any arguments regarding the timeliness of service of process or proof of service will be addressed at that time.

17

**IV.    CONCLUSION**

For the reasons outlined above, the motions to dismiss for lack of personal jurisdiction listed in Exhibit "A," attached, will be granted and the defendants who filed the motions will be dismissed from the cases.

As to the motions to dismiss due to improper service of process listed in Exhibit "B," attached, the motions will be denied.

An appropriate order follows.